EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | 2019 TSPR 148 |
| | |
| José Meléndez Figueroa | 203 DPR _____ |

Número del Caso:  CP-2005-19
                  (TS-5,173)

Fecha:  2 de agosto de 2019

Abogado de la parte querellada:

    Lcdo. Iván T. Marrero Canino

Oficina del Procurador General:

    Lcda. Maite D. Oronoz Rodríguez
    Subprocuradora General

    Lcda. Miriam D. Soto Contreras
    Procuradora General Auxiliar

    Lcda. Mariana D. Negrón Vargas
    Procuradora General Auxiliar

    Lcda. Edna E. Rodríguez Benítez
    Procuradora General Auxiliar


Comisionado Especial:

    Hon. Antonio J. Negroni Cintrón


Materia:  La suspensión será efectiva una vez advenga final y firme la Sentencia conforme la Regla 45 del Reglamento del Tribunal Supremo sobre reconsideración.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

José Meléndez Figueroa
    (TS-5,173)                 CP-2005-0019

*PER CURIAM*

En San Juan, Puerto Rico, a 2 de agosto de 2019.

El Lcdo. José Meléndez Figueroa fue admitido al ejercicio de la abogacía el 28 de mayo de 1976 y al ejercicio del notariado el 19 de diciembre de 1976.

El 8 de marzo de 1988, el señor Ayala Rodríguez otorgó testamento abierto ante el licenciado Meléndez Figueroa. El testador le dejó la legítima estricta, la mejora y el tercio de libre disposición a sus hijos María Dolores, Elizabeth, Martha, Luis Alfredo y Angélica, todos de apellidos Ayala Rosario, pero a su hija, la Sra. Ana M. Ayala Jiménez, hermana de padre de los otros herederos, solamente la incluyó en la legítima estricta. Se hizo constar en el testamento

que en los tercios de mejora y libre disposición solo tenían participación los demás hijos del testador.

En 1996, la Sra. Martha Ayala, una de las hijas del testador, inició un proceso judicial ex parte para nombrarle un tutor al testador. El licenciado Meléndez Figueroa asumió la representación legal de la Sra. María Ayala, quien fue nombrada tutora del testador. El 17 de septiembre de 1999, la Sra. María Ayala renunció a la tutela del testador. No obstante, esta continuó siendo una de las integrantes de la sucesión y aún estaba siendo representada legalmente por el licenciado Meléndez Figueroa.

Luego de esto, el Tribunal de Primera Instancia nombró tutora a otra de las hijas del testador, la Sra. Angélica Ayala. Esta aceptó el cargo el 22 de febrero de 2000.

El 10 de enero de 2003, el señor Ayala Rodríguez falleció. El 4 de febrero de 2003, en contestación a una carta enviada por el Lcdo. Antonio Ríos Acosta, el licenciado Meléndez Figueroa le solicitó una reunión para "discutir la adjudicación a los herederos del correspondiente caudal relicto". Surge de esa carta que -por lo menos desde febrero de 2003- el licenciado Meléndez Figueroa comenzó a realizar gestiones con relación a la liquidación de la herencia.

El 4 de septiembre de 2003, el licenciado Meléndez Figueroa presentó una moción en representación de la Sra. María Ayala y otro de los herederos, el Sr. Carlos Ayala. En esa moción, solicitó que no se cancelara una vista que estaba pautada para el 11 de septiembre de 2003 en la que se

discutiría el informe final de tutela, pues el licenciado Ríos Acosta se había reunido con sus representados, la Sra. María Ayala y el Sr. Carlos Ayala, sin que él estuviera presente. Expuso que el licenciado Ríos Acosta informó a los herederos que las cláusulas testamentarias eran ineficaces. Indicó, además, que los comparecientes no aprobaban el informe final de tutela, el retiro de fondos ni la división de la comunidad hereditaria. Junto con esa moción, se enviaron declaraciones juradas que prestaron la Sra. María Ayala y el Sr. Carlos Ayala.

En la vista de 11 de septiembre de 2003, las partes acordaron los términos para resolver sus diferencias en cuanto a la distribución del caudal hereditario. En ese acuerdo, las partes consintieron aplicar las cláusulas testamentarias a favor de los dos herederos que estaban representados por el licenciado Meléndez Figueroa.

Luego de que el Tribunal de Primera Instancia nos refirió este asunto, instruimos al Procurador General a presentar una querella disciplinaria contra los licenciados Ríos Acosta y Meléndez Figueroa. El 10 de octubre de 2008, el Comisionado Especial rindió su informe y recomendó que los halláramos incursos en violación a los Cánones 28 y 21 del Código de Ética Profesional, respectivamente. El 29 de abril de 2009, suspendimos al licenciado Ríos Acosta por violar el Canon 28 del Código de Ética Profesional, supra. In re Ríos[,] Meléndez, 175 DPR 923 (2009). Para esa fecha el licenciado Meléndez Figueroa se encontraba suspendido del ejercicio de

la abogacía y la notaria, por lo que no pudimos ejercer nuestra función disciplinaria en cuanto a este.

El licenciado Meléndez Figueroa fue reinstalado al ejercicio de la abogacía el 9 de octubre de 2018, y como habíamos adelantado en 2008, ante esa eventualidad, se reactivó la querella. In re Ríos[,] Meléndez, supra, pág. 930. Así, procedemos a atender la queja pendiente en su contra.

II

El Canon 21 del Código de Ética Profesional, supra, dispone que

> [e]l abogado tiene para su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional puede ser afectado por sus intereses personales.

En el pasado, hemos delineado las tres instancias principales que los miembros de la profesión legal deben evitar, pues representan conflictos de intereses. In re Gordon Menéndez, 183 DPR 628, 639 (2011). La primera de ellas es la representación simultánea de clientes. Íd. La segunda se configura cuando un abogado asume la representación legal adversa de clientes. Íd.

El ultimo escenario que preceptúa este canon como configurativo de un conflicto de intereses es cuando un abogado asume la representación legal de un cliente a sabiendas de que su juicio profesional puede verse afectado

por sus intereses personales. Íd. Distinto a los primeros dos escenarios, en este escenario existe solo una relación abogado-cliente que entra en conflicto con los intereses personales, familiares, económicos, profesionales, o de otra índole, del propio abogado. Íd. Hemos expresado que, para determinar la situación de posible conflicto de intereses en cualquiera de las situaciones antes indicadas, es indispensable tener en mente que la prohibición del Canon 21 del Código de Ética Profesional, supra, requiere no solo la existencia real del conflicto, sino que se extiende igualmente a conflictos aparentes, pero que llevan consigo la semilla de un posible o potencial conflicto futuro. Íd., pág. 641. In re Ortiz Martínez, 161 DPR 572, 581 (2004).

Los herederos que estuvieron representados por el licenciado Meléndez Figueroa le informaron a este que el licenciado Ríos Acosta les indicó que entendía que el testamento podía ser nulo por no haberse cumplido con el requisito solemne del otorgamiento en un solo acto, sin interrupción. Esto constituía una imputación seria sobre el desempeño del licenciado Meléndez Figueroa como notario y presentaba la posibilidad de que el testamento que él autorizó fuera impugnado.

Aunque la vista de 11 de septiembre de 2003 estaba relacionada con el proceso de tutela, era evidente que en esa vista se discutirían asuntos o controversias relacionadas con la liquidación de la herencia y que podía mencionarse en algún

momento lo concerniente a la nulidad del testamento que autorizó el licenciado Meléndez Figueroa.

El licenciado Meléndez Figueroa debió informarles a sus representados sobre las consecuencias de un ataque a la validez del testamento en estas circunstancias y renunciar a la representación legal de los herederos cuando surgió el potencial conflicto de interés. Ese momento ocurrió cuando advino en conocimiento de que el licenciado Ríos Acosta se reunió con los herederos que él representaba y les informó que entendía que el testamento era nulo, ya que existía el riesgo de que su juicio y obligación profesional como notario confligiera con su obligación de fidelidad hacia los herederos.

Queda siempre al sano juicio del notario, dentro de su responsabilidad profesional, decidir cuándo debe abstenerse de actuar, aún en casos en que su actuación estaría permitida, pero que por sus particulares circunstancias en la dimensión ética puedan generar un potencial de conflicto. In re Colón Ramery I, 133 DPR 555, 568 (1993). Reiteradamente, hemos expresado que cualquier duda de índole ético profesional que le surja al letrado, debe resolverla con rigurosidad contra sí mismo. In re Gordon Menéndez, supra, pág. 641; In re Carreras Rovira y Suárez Zayas, 115 DPR 778, 785 (1984).

En lugar de renunciar a la representación legal de los herederos, el letrado Meléndez Figueroa continuó representando a los herederos y compareció a la vista relacionada al proceso de tutela. Sus actuaciones fueron

imprudentes. Mediante estas, el licenciado Meléndez Figueroa contravino la norma que establece el Canon 21 del Código de Ética Profesional, supra.

Hemos establecido que al determinar la sanción disciplinaria aplicable al abogado querellado, podemos tomar en cuenta factores tales como la reputación del abogado en la comunidad, el previo historial profesional de este, si constituye la actuación objeto del procedimiento disciplinario su primera falta, su aceptación y su sincero arrepentimiento, el ánimo de lucro que incitó su actuación, si hubo resarcimiento al cliente y cualquier otro atenuante o agravante que medie en los hechos particulares al caso. In re Rivera Nazario, 193 DPR 573, 587 (2015); In re Avilés, Tosado, 157 DPR 867, 894 (2002).

Hemos sancionado disciplinariamente al licenciado Meléndez Figueroa anteriormente. Lo suspendimos indefinidamente del ejercicio de la abogacía y la notaría en una ocasión por exhibir conducta deshonesta en violación de los Cánones 18, 25, 35 y 38 del Código de Ética Profesional, supra. Véase, In re Meléndez Figueroa, 166 DPR 199 (2005). El querellado no ha mostrado indicio alguno de arrepentimiento o aceptación por las violaciones imputadas en esta ocasión.

Evaluados los criterios que mencionamos, suspendemos al licenciado Meléndez Figueroa del ejercicio de la abogacía por el término de 6 meses. Le apercibimos de que, en el futuro, de repetir la conducta que dio lugar a esta querella, estaría expuesto a sanciones más severas.

III

Por los fundamentos antes expuestos, y tal como hicimos en 2009 con el licenciado Ríos Acosta, suspendemos al licenciado Meléndez Figueroa del ejercicio de la abogacía por el término de seis meses y conforme con lo aquí dispuesto. Véase, In re Ríos[,] Meléndez, supra, pág. 931. Le apercibimos que cualquier violación ética futura conllevará sanciones más severas.

Le ordenamos al señor Meléndez Figueroa notificar a sus clientes de su inhabilidad para seguir representándolos y devolverles cualesquiera honorarios recibidos por trabajos no realizados e informar inmediatamente de su suspensión a los foros judiciales y administrativos en los que tenga algún caso pendiente. Asimismo, deberá acreditar a este Tribunal el cumplimiento con lo anterior dentro del término de treinta días a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.

Notifíquese personalmente esta Opinión *Per Curiam* y Sentencia al señor Meléndez Figueroa a través de la Oficina del Alguacil de este Tribunal.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

José Meléndez Figueroa
         (TS-5,173)                    CP-2005-0019

SENTENCIA

En San Juan, Puerto Rico, a 2 de agosto de 2019.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de esta Sentencia, tal como hicimos en 2009 con el licenciado Ríos Acosta, suspendemos al licenciado Meléndez Figueroa del ejercicio de la abogacía por el término de seis meses y conforme con lo aquí dispuesto. Véase, In re Ríos[,] Meléndez, supra, pág. 931. Le apercibimos que cualquier violación ética futura conllevará sanciones más severas.

Le ordenamos al señor Meléndez Figueroa notificar a sus clientes de su inhabilidad para seguir representándolos y devolverles cualesquiera honorarios recibidos por trabajos no realizados e informar inmediatamente de su suspensión a los foros judiciales y administrativos en los que tenga algún caso pendiente. Asimismo, deberá acreditar a este Tribunal el cumplimiento con lo anterior dentro del término de treinta días a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.

Notifíquese personalmente esta Opinión *Per Curiam* y Sentencia al señor Meléndez Figueroa a través de la Oficina del Alguacil de este Tribunal.

        Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez no intervino. La Jueza Presidenta Oronoz Rodríguez está inhibida.


                        José Ignacio Campos Pérez
                     Secretario del Tribunal Supremo